# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ANGEL GUERRERO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,[1]<br><br>　　　　Defendant.<br>_____/ | Case No. 1:20-cv-01766-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Miguel Angel Guerrero ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K.

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commisoner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

Oberto, United States Magistrate Judge.[2]

## II.     BACKGROUND

Plaintiff was born on December 28, 1973, and was 41 years old on the current alleged disability onset date. (Administrative Record ("AR") 26, 105, 126, 149, 170.) He completed the eleventh grade. (AR 26, 41, 303.)

In a decision dated October 8, 2015, an ALJ rejected Plaintiff's prior applications for DIB and SSI payments, assessing a residual functional capacity ("RFC")[3] of sedentary work with additional physical restrictions. (AR 83–92.)

On November 21, 2016, Plaintiff again applied for DIB and SSI payments, alleging he became disabled on September 9, 2015, due to "[m]ultiple gun shot injuries; "[b]ullet fragments throughout the body;" and "[s]evere pain throughout the body." (AR 105–106, 126–27, 149–50, 170–71, 302, 445, 651.)

### A.     Relevant Medical Evidence of Record[4]

In May 2017, Plaintiff underwent an examination by consultative examiner Mickey Sachdeva, M.D. (AR 437–41.) He complained of hip pain from gunshot wounds years ago that penetrated his left lower extremity, pain in his back, and not being able to stand straight. (AR 437.) He reported having a rod placed in his femur as a result of the gunshot. (AR 437.)

While Dr. Sachdeva noted Plaintiff "walked in with a forward-flexed posture," he also observed that "this is inconsistent as he is unable to forward flex or extend normally at times but it later became obvious that he is able to perform those activities." (AR 439.) There were two scares in the lateral aspect of Plaintiff's left hip, with no clubbing, cyanosis, or edema. (AR 440.) Dr. Sachdeva observed Plaintiff's range of motion was within normal limits, he had full (5/5) strength,

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

[4] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

and normal neurological findings. (AR 440–41.)

Imaging studies were taken of Plaintiff in July 2018. (AR 492–98, 512, 523–26.) X-rays of Plaintiff's thoracic and lumbar spine showed degenerative changes and no subluxations. (AR 492, 493, 523, 524.) An x-ray of Plaintiff's bilateral hips showed degenerative changes, postsurgical changes of the left femur, the presence of an intramedullary rod, and an old, healed fracture of the distal femur. (AR 494, 526.) Plaintiff's x-ray of the left femur showed posttraumatic changes, bullet fragments, and contour changes involving the distal aspect of the femur. (AR 495, 525.)

Plaintiff presented for a physical examination in August 2018. (AR 466–69.) Plaintiff had reduced ranges of motion in his cervical and lumbar spine, with pain to his lumbar spine on palpation. (AR 466.) His gait and all clinical tests were normal. (AR 466–67.) Plaintiff's sensation and strength were normal. (AR 467.)

In September 2018, Plaintiff presented for a "bilateral lower nerve conduction study and bilateral lower needle EMG," complaining of lower back pain that radiates to his lower extremities. (AR 478.) The results of the studies were normal. (AR 478.) A CT study of Plaintiff's lumbar spine performed that same month showed diffuse disc bulge at L3-L4; broad-based disc protrusion at L4-L5; and mild disc height loss with mild-to-moderate right neural foraminal stenosis at L5-S1. (AR 497–98.)

Plaintiff was referred to physical therapy in October 2018. (AR 509–10.) The next month, he complained that "at times [he] feels that his legs do not want to support him," and requested a cane for balance. (AR 507.) He was prescribed Norco for pain. (AR 508.)

In December 2018, Plaintiff's lumbosacral area was tender, but no other abnormalities were noted on a physical exam. (AR 503). His medication was refilled. (AR 504.) He walked with a forward lean in January 2019 and exhibited tenderness over the lumbosacral area. (AR 505.) He was directed to make an appointment with pain management. (AR 505.)

Plaintiff presented for a pain consultation in March 2019, complaining of lower back pain. (AR 686–90.) On examination, his gait was abnormal, as well as the range of motion in his lumbar spine, while lumbar provocative tests were all normal. (AR 687–88.) Plaintiff's sensation in his

lumbar spine dermatomes was abnormal at L1-L5 and his strength was normal. (AR 688–89.)

In April 2019, Plaintiff underwent a lumbar medial branch block to treat his bulging lumbar disc, and received epidural injections at L5 and S1 in May 2019. (AR 530, 679, 760.) Plaintiff attended physical therapy sessions for left lumbar radicular symptoms from April to June 2019. (AR 703–16.)

Consultative examiner internist Roger Wagner, M.D. evaluated Plaintiff in June 2019. (AR 644–48.) Plaintiff complained of left hip and leg pain, low back pain, and right forearm pain. (AR 644.) He reported that he shops and performs his own activities of daily living without assistance, and walks, swims, and does physical therapy for exercise. (AR 645.) Dr. Wagner noted Plaintiff "easily able to get up from a chair in the waiting room and walk at a normal speed back to the examination room without assistance," appearing "slightly stiff the first step or two." (AR 645.) He walked "perhaps slightly bent forward at the lumbar back when ambulating," and "sat comfortably," was "easily able to get on and off the exam table," and "easily able to bend at the waist to take off shoes and socks and put them back on, demonstrating good dexterity and good flexibility." (AR 645.)

Dr. Wagner observed Plaintiff was able "walk several steps on toes and heels," with a normal station and normal gait, other than the first few steps. (AR 646.) Examination of Plaintiff's knees revealed "no redness, heat, swelling, tenderness, effusions, ligamentous laxity or crepitus." (AR 647.) According to Dr. Wagner, Plaintiff "had full range of motion of the hips with no real discomfort at extremes of range of motion" and his "dexterity bilaterally [was] good." (AR 647.) His strength was full (5/5) with exception of his right-hand grip, which was 4/5. (AR 647.) Dr. Wagner was diagnosed Plaintiff with left femur gunshot wound, low back pain, and right forearm gunshot wound. (AR 648.)

Plaintiff presented to the pain management clinic complaining of back pain in July 2019. (AR 673–76.) On examination, Plaintiff had abnormal range of motion and pain in his lumbar spine. (AR 674–75.) His gait was normal, and no assistive device was used for ambulation. (AR 674.) Bilateral Patrick testing was positive, while straight leg raise testing and sensation were both normal. (AR 674–75.) Plaintiff had some weakness in his right ankle with dorsiflexion, but

otherwise exhibited normal strength. (AR 675.) His August 2019 exam results were largely similar to those from the preceding month. (AR 670–71).

Plaintiff presented to the emergency department complaining of an allergic reaction in October 2019. (AR 722–36.) He denied back pain, neck pain, agitation, and confusion. (AR 724.) On examination, he had normal range of motion in his neck and normal mental status. (AR 724–25.) Earlier that same month, Plaintiff underwent medial branch blocks in his lumbar spine as a result of "objective findings of pain with extension and rotation." (AR 758–59.) Physical examinations performed that month showed tenderness in his spine, restricted range of motion, and some positive lumbar provocative test results. (AR 792.) Plaintiff's gait was normal, and no assistive device used for ambulation. (AR 783.)

In November 2019, CT imaging of Plaintiff's lumbar spine showed "[n]o change compared to the prior CT lumbar spine dated 9/28/2018 redemonstrating degenerative changes at L3-L4 through LS-SI." (AR 697.) That same month, Plaintiff presented at an outpatient clinic complaining of "multiple episodes of hives," as per his prior emergency room visit. (AR 743.)

Plaintiff complained of low back pain in December 2019 and was advised to alternate heat and ice, stretch, and take medications as prescribed. (AR 740–41.) His physical examination results were unchanged from October 2019. (AR 778–79.) He then received additional bilateral and medial branch blocks. (AR 756–57

In January 2020, a physical examination showed Plaintiff's gait was normal, with no assistive device used for ambulation. (AR 773.) Bilateral Patrick testing was positive, while straight leg raise testing was normal and no muscle spasm found. (AR 773–74.) Plaintiff had some reduced sensation in L4–L5 and weakness in his right ankle with dorsiflexion, but otherwise exhibited normal sensation and strength. (AR 774.)

Plaintiff underwent left lumbar medial branch radiofrequency neurolysis in May 2020, which was to "provide long term relief for [his] back symptoms." (AR 766.) A physical examination performed that same month yielded results like those found in January 2020. (AR 763–64.)

///

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on July 21, 2017, and again on reconsideration on August 7, 2019. (AR 195–204, 208–19.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 222–37.)

On July 21, 2020, Plaintiff appeared telephonically with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 40–68.) A vocational expert ("VE") also testified at the hearing. (AR 68–77.)

**C.     The ALJ's Decision**

In a decision dated August 17, 2020, the ALJ found that Plaintiff was not disabled. (AR 15–27.) The ALJ first determined that Plaintiff had rebutted the "presumption of continuing non-disability" arising from the prior ALJ's finding of non-disability in 2015, established by the Ninth Circuit case *Chavez v. Bowen*, because Plaintiff had shown "changed circumstances," specifically "additional impairments not previously considered in the prior decision, including degenerative disc disease in various areas of the spine, osteoarthritis of the hip and multiple mental impairments." (AR 16) (citing *Chavez v. Bowen*, 844 F.2d 691 (1988) and Social Security Acquiescence Ruling ("SS AR"), 97-4(9).) The ALJ continued, stating that they had "considered *Chavez* at all steps in the sequential evaluation" and finding that Plaintiff is "now capable of a reduced range of light work due to medical improvement but despite additional impairments." (AR 16.)

The ALJ then proceeded to conduct the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 16–27.) The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2016, and he had not engaged in substantial gainful activity since September 9, 2015, the alleged onset date (step one). (AR 18.) At step two, the ALJ found Plaintiff's following impairments to be severe: thoracic and lumbar degenerative disc disease, status post gunshot wound with femoral rodding, schizophrenia, osteoarthritis of both hips, and bipolar, anxiety and adjustment disorders. (AR 18.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 18–20.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except he can walk for 4 hours of an 8 hour workday, engage in frequent climbing of ramps and stairs and balancing. He can occasionally climb ladders, ropes and scaffolds, stoop kneel, crouch and crawl. He can engage in no operation of leg or foot controls left lower extremity, face no more than occasional contact with the general public, coworkers and supervisors, and can understand, remember and apply information to perform simple tasks. He is able to focus on and complete simple tasks, can make simple decisions and adapt to routine changes in the workplace setting.

(AR 20–25.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 21.)

The ALJ determined that, given his RFC, Plaintiff could not perform his past relevant work (step four), but that he could perform a significant number of other jobs in the local and national economies, specifically garment sorter, bench assembler, and electronics worker (step five). (AR 25–27.) The ALJ concluded Plaintiff was not disabled from September 9, 2015, through the date of his decision. (AR 27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 20, 2020. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However,

7

"[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in

the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff asserts that the ALJ made several errors in evaluating Plaintiff's disability. He first contends that the ALJ erred by increasing Plaintiff's RFC to the light level, when it had been previously found in the 2015 ALJ decision to be sedentary, in violation of *Chavez v. Bowen*, 844

F.2d 691 (9th Cir. 1988). (Doc. 17 at 6–8.) Plaintiff next asserts there is no substantial evidence to support the ALJ's RFC assessment because the ALJ relied on the lay interpretation of the medical record and "cherry picked" evidence to support their conclusion. (*See* Doc. 17 at 8–10.) Finally, Plaintiff that the appointment status of the Commissioner affects his case, relying on *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020). (*See* Doc. 17 at 10–11.)

The Commissioner disagrees, asserting that Plaintiff is not entitled to a presumption that he was limited to a sedentary RFC, as found by the prior ALJ in 2015, because the current ALJ found "new and material evidence" relevant to that prior finding. (Doc. 18 at 10–12.) Next, the Commissioner contends the ALJ properly evaluated the medical opinion evidence and formulated an RFC supported by substantial evidence. (Doc. 18 at 12–16.) The Commissioner finally asserts the appointment status did not actually cause harm to Plaintiff's case. (Doc. 18 at 16–26.) Thus, the Commissioner contends the decision as a whole is supported by substantial evidence.

The Court reverses and remands for further administrative proceedings because the ALJ's finding that Plaintiff is "now capable of a reduced range of light work due to medical improvement" is not supported by substantial evidence and therefore, contrary to *Chavez* and the Social Security Acquiescence Ruling, the ALJ failed to give "some res judicata consideration" to the ALJ's 2015 RFC assessment of sedentary work. *See Chavez*, 844 F.2d at 694; SS AR 97-4(9), 1997 WL 742758, at *2–*3. Because the Court remands for further proceedings, specifically a reassessment of Plaintiff's RFC, it does not reach Plaintiff's additional challenge to the RFC and request for remand under *Seila Law LLC*.[5]

**A.    Cases Involving Prior Final Agency Decisions of Nondisability**

In cases involving a prior final agency decision of nondisability where the claimant subsequently files a new application for benefits, the prior administrative decision triggers a presumption of continuing nondisability. *Chavez v. Bowen*, 844 F.2d 691, 693–64 (9th Cir. 1988)

---

[5] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

(where ALJ made "no reference" to prior ALJ's decision and "failed to consider the first judge's findings," the "principles of res judicata made binding the first judge's determination"). To overcome this presumption of continuing nondisability, the claimant "must prove 'changed circumstances' indicating a greater disability." *Id*. (because the defendant failed to identify "new" information that "had not been presented to the first" ALJ, it was error for the second ALJ to have "reopened the prior [ALJ's] determinations concerning the claimant's ability to perform his past relevant work") (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)); *cf. Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1172–73 (9th Cir. 2008) (where "[t]he entirety of the medical evaluations presented with respect to the [claimant's] present application were conducted after [claimant's] initial disability determination [,] [t]hese evaluations necessarily presented new and material information not presented to the first ALJ") (applying *Chavez* ).

Social Security Acquiescence Ruling 97–4(9) provides guidance on the *Chavez* decision:

> In order to rebut the presumption of continuing nondisability, a claimant must prove "changed circumstances" indicating a greater disability. In addition, the court [in *Chavez* ] indicated that where the claimant rebuts the presumption by proving a changed circumstance, principles of res judicata require that certain findings contained in the final decision by the ALJ on the prior claim must be given some res judicata consideration in determining whether the claimant is disabled . . . The court concluded that where the final decision on the prior claim, which found the claimant not disabled, contained findings of the claimant's residual functional capacity, education, and work experience, [the agency] may not make different finding in adjudicating the subsequent disability unless there is new and material evidence . . .

SS AR 97-4(9), 1997 WL 742758, at *2–*3. ).[6] Although the presence of additional impairments rebuts the general presumption of nondisability, that alone is insufficient to rebut the specific findings of the prior decision. *Chavez*, 844 F.2d at 694. Instead, there must be "new and material" evidence relating to each specific finding. *See* SS AR 97–4(9).

After a final agency determination of nondisability, where the claimant experiences

---

[6] Acquiescence Rulings are Social Security Administration policy statements issued in response to the Court of Appeals' holdings, and they "describe the administrative case and the court decision, identify the issue(s) involved, and explain how we will apply the holding, including, as necessary, how the holding relates to other decisions within the applicable circuit." 20 C.F.R. § 404.985(b). They are binding on the Social Security Administration, 20 C.F.R. § 402.35(b)(2); and are accorded deference by reviewing courts. *McNabb v. Barnhart*, 340 F.3d 943, 944–45 (9th Cir. 2003).

improvement in the nature of his limitations and pain allegedly suffered, an ALJ may determine that a claimant's condition has improved. *See Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir.1985) (where claimant's first application for benefits was denied, the presumption of continuing non-disability applied, and ALJ properly determined that claimant's condition had "improved rather than deteriorated" in the period leading to second application for benefits.)  In general, the Commissioner bears the burden of establishing that a claimant has experienced medical "improvement" that would allow him to engage in substantial gainful activity. *Chao v. Astrue*, No. 2:10-CV-01972 KJN, 2012 WL 868839, at *5 (E.D. Cal. Mar. 13, 2012) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983) (to terminate benefits after they were previously awarded, it is defendant's burden to "come forward with evidence of improvement," and such evidence must be reviewed under the "substantial evidence standard")).

**B.     The ALJ Improperly Found that New and Material Evidence Supported Adjusting Plaintiff's RFC**

In 2015, the ALJ assessed the following RFC:

> [T]he residual functional capacity to perform a limited range of sedentary work as defined in 20 C.F.R. §§ 404.156767(a) and 416.967(a). [Plaintiff] must use a cane for ambulation of long distances and uneven terrain. He can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. [Plaintiff] can frequently balance, stoop, and crawl, and occasionally kneel and crouch. He can frequently handle and finger with his right hand.

(AR 87.)  In the current decision, the ALJ changed the physical RFC from what amounted to sedentary work to light work, and eliminated the restriction of needing a cane for ambulation:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except he can walk for 4 hours of an 8 hour workday, engage in frequent climbing of ramps and stairs and balancing. He can occasionally climb ladders, ropes, and scaffolds, stoop kneel, crouch and crawl. He can engage in no operation of leg or foot controls left lower extremity, face no more than occasional contact with the general public, coworkers and supervisors, and can understand, remember and apply information to perform simple tasks. He is able to focus on and complete simple tasks, can make simple decisions and adapt to routine changes in the workplace setting.

(AR 20.)

Neither party challenges the ALJ's ultimate ruling that the 2015 ALJ decision of non-

disability is not entitled to res judicata effect because Plaintiff established "additional impairments not previously considered in the prior decision," namely, "degenerative disc disease in various areas of the spine, osteoarthritis of the hip[,] and multiple mental impairments," which constituted "changed circumstances" (AR 16). *See Chavez*, 844 F.2d at 693 ("The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability.").

However, in refusing to give res judicata effect to the RFC findings in the 2015 decision, which provided for sedentary work, the ALJ determined that "new and material" evidence showed Plaintiff "is now capable of a reduced range of light work due to medical improvement." (AR 16.) This finding is not supported by substantial evidence. The ALJ does not identify *which* evidence shows that Plaintiff's healed left femoral fracture with intramedullary rod and history of gunshot and stab wounds—both which were found to be severe impairments in 2015 (*see* AR 85–86)—had improved to the point where Plaintiff is now capable of light work. Other than the ALJ's isolated finding of "medical improvement" in connection with *Chavez*, the words "improve," "improved," or "improvement" do not appear in the ALJ's decision. The ALJ's failure to identify any evidence—much less ***substantial*** evidence—of medical improvement in support of their conclusion that Plaintiff could perform light work is erroneous. *See Garcia v. Astrue*, No. C-07-05469 JCS, 2008 WL 4104342, at *7 (N.D. Cal. Sept. 4, 2008) (Commissioner erred by not citing to substantial evidence of medical improvement in support of their conclusion that Plaintiff could perform light work).

In fact, not only does the medical evidence of record not show improvement of these impairments, but it also demonstrates that they, at best, remained largely unchanged from 2015 and, in some instances, worsened over time. For example, an x-ray of Plaintiff's bilateral hips in July 2018 showed degenerative changes, postsurgical changes of the left femur, the presence of an intramedullary rod, and an old, healed fracture of the distal femur. (AR 494, 526.) The x-ray of Plaintiff's left femur showed posttraumatic changes, bullet fragments, and contour changes involving the distal aspect of the femur. (AR 495, 525.) Plaintiff had a normal gait in August 2018

13

(AR 466–67), but walked with a forward lean in January (AR 505) and June 2019 (AR 645).  In March 2019, Plaintiff had normal strength in his bilateral extremities (AR 688–89), but in June 2019, Plaintiff's right-hand grip strength was reduced (AR 647), and he was diagnosed by the consultative examiner with left femur gunshot wound, low back pain, and right forearm gunshot wound (AR 648).  Plaintiff's bilateral Patrick testing was positive and he had some weakness in his right ankle with dorsiflexion in July 2019.  (AR 675.)   These abnormal results remained unchanged in physical examinations performed in August 2019 (AR 670–71), January 2020 (AR 773–74), and May 2020 (AR 763–64).

Furthermore, the ALJ failed to explain how the new severe impairments of thoracic and lumbar degenerative disc disease and osteoarthritis of both hips—conditions not evaluated in 2015 when a more restrictive RFC was assessed—could demonstrate ***greater*** disability thereby overcoming the *Chavez* presumption of non-disability and, at the same time, demonstrate that Plaintiff had *fewer* exertional limitations than he did in 2015.  *See Santillan v. Astrue*, No. CV-07-998-PHX-MHM, 2008 WL 4183026, at *10 (D. Ariz. Sept. 8, 2008) (finding that "later-developed impairments are inconsistent with the concept that the Plaintiff experienced medical improvement resulting in a higher residual functional capacity," and therefore the "readjudication of residual functional capacity is unsupported by the record and constituted legal error.").

In sum, the ALJ failed to meet their burden of supporting the finding that Plaintiff was "now capable of a reduced range of light work due to medical improvement," such that he was no longer was limited by the 2015 RFC of sedentary work, and the medical evidence of record tends to show the contrary.  As such, the Court finds ALJ committed reversible error by failing to give "some res judicata consideration" to the RFC findings in the 2015 decision.[7]  *See Chavez*, 844 F.2d at 694 ("The first administrative law judge's findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in

---

[7] The error is not harmless because, although the ALJ inquired at the hearing about sedentary jobs available in the national economy (*see* AR 72–73), they did not ask the Vocational Expert about sedentary work further limited by the additional restrictions found in the medical record and incorporated in the present RFC, namely occasional (as opposed to frequent) stooping and crawling; inability to use leg or foot controls with Plaintiff's left lower extremity; and occasional contact with the general public, coworkers, and supervisors (*see* AR 20). *See Drake*, 805 F. App'x at 468–69; *Elizabeth C.*, 2021 WL 62438, at *3.  *See generally Molina*, 674 F.3d at 1111, 1115; *Tommasetti*, 533 F.3d at 1038.

subsequent proceedings."); SS AR 97-4(9), 1997 WL 742758, at *3 ("If the claimant rebuts the presumption, adjudicators then must give effect to certain findings . . . contained in the final decision by an ALJ or the Appeals Council on the prior claim, when adjudicating the subsequent claim. For this purpose, the Ruling applies only to a finding of a claimant's residual functional capacity . . . ."). *See also Drake v. Saul*, 805 F. App'x 467, 468 (9th Cir. 2020) ("Because there is no evidence that the limitations reflected in the 2011 Decision's RFC findings improved, they should have been considered in the formulation of the 2015 Decision's RFC finding," and thus "the ALJ committed reversible error in failing to give res judicata effect to the [RFC] findings in the 2011 Decision."); *Elizabeth C. v. Comm'r of Soc. Sec.*, No. C20-5025-BAT, 2021 WL 62438, at *3 (W.D. Wash. Jan. 7, 2021) (finding harmful error where the ALJ failed to show that new and material evidence demonstrates that the plaintiff was capable of light work and fewer restrictions than the past determination of sedentary work).

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  On remand, the ALJ should reevaluate RFC, the medical record, testimony, and any step of the five-step sequential analysis from step two onward; afford a new hearing; and permit, if needed, any supplemental evaluations of Plaintiff's mental or physical RFC.

The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Miguel Angel Guerrero and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **June 1, 2022**                            /s/ *Sheila K. Oberto*                
                                             UNITED STATES MAGISTRATE JUDGE